Chad L. Schexnayder (No. 009832)
E-Mail: cls@jhc-law.com
Travis A. Pacheco (No. 026337)
E-Mail: tap@jhc-law.com
**Jennings, Haug & Cunningham, L.L.P.**
2800 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-1049
Telephone:   602-234-7800
Facsimile:    602-277-5595

Thomas R. Kline
E-Mail: Tom.Kline@klinespecter.com
David J. Caputo
E-Mail: David.Caputo@klinespecter.com
David C. Williams
E-Mail: David.Williams@klinespecter.com
**KLINE & SPECTER**
1525 Locust Street, Nineteenth Floor
Philadelphia, Pennsylvania  19102
Telephone: 215-772-1000

Joseph Trautwein
E-Mail: jtrautwein@cpmiteam.com
**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**
17 Auchy Road
Erdenheim, Pennsylvania  19038
Telephone:  215-764-2301

Attorneys for Plaintiff

FILED
RECEIVED
APR 1 2 2016
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

SEALED

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA          CV-16-08072-PCT-PGR

| | |
|---|---|
| United States of America, ex rel. Gregory Kuzma,<br><br>Plaintiff,<br><br>vs.<br><br>Yavapai Community Hospital Association, trading as Yavapai Regional Medical Center,<br><br>Defendant. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730 AND LOCAL CIVIL RULE 5.7**<br><br>Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

I.    **INTRODUCTION AND SUMMARY**

1.    The Social Security Act establishes a system of payment for the operating costs of hospital inpatient stays under the Medicare program based on prospectively set

31U2874.DOCX

rates. Under this payment system, the United States pays hospitals using a formula based in part on the resources (or "costs") the hospital used to treat the Medicare patients. These costs include the wages paid to hospital employees. Hospitals are required to submit periodic reports containing cost data ("cost reports") that permit calculation of the payment rate for the hospitals in a given geographically-defined area (or "market area").

2. Defendant Yavapai Community Hospital Association, trading as Yavapai Regional Medical Center ("Yavapai"), operates two Arizona hospitals, Yavapai Regional Medical Center West ("YRMC West") and Yavapai Regional Medical Center East ("YRMC East"). In its cost reports for cost reporting periods 2007 and 2008, Yavapai understated the hours worked by YRMC West hospital employees, artificially increasing the average hourly wage reported to the United States.

3. The United States, relying on Yavapai's data, computed a higher wage index for Yavapai's market area, resulting in Medicare overpayments to Yavapai of approximately $15.1 million for federal fiscal years 2011 through 2014. Though Yavapai correctly reported YRMC West's hours for cost reporting period 2009, Yavapai's conduct nevertheless caused Medicare to overpay Yavapai an additional $4 million for federal fiscal years 2013 through 2015.

4. Yavapai either actually knew that it had underreported YRMC West's hours to the United States or acted in conscious disregard of that fact. By at least 2010, when Yavapai accurately reported YRMC West's 2009 hours, Yavapai was aware that it had underreported the 2007 and 2008 hours. Yavapai nonetheless submitted claims to Medicare between federal fiscal years 2011 through 2015 that were improperly inflated due to the higher wage index. No later than February 2011, Yavapai was aware that it had received Medicare overpayments as a result of its underreported hours.

5. Despite its awareness, Yavapai has not returned any overpayments to Medicare. Accordingly, Yavapai violated the United States False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"), by knowingly submitting or causing the submission of false

and fraudulent claims in excess of $19 million, and by knowingly concealing its obligation to repay Medicare.

6. On behalf of the United States of America, Plaintiff-Relator Gregory Kuzma ("Relator") files this qui tam Complaint for treble damages and civil money penalties against defendant Yavapai. In support of these claims, Relator alleges as follows:

## II. THE PARTIES

### A. Relator

7. Plaintiff-Relator Gregory Kuzma is an individual citizen of the State of Arizona.

### B. Defendant

8. Defendant Yavapai Community Hospital Association, trading as Yavapai Regional Medical Center ("Yavapai"), is an Arizona non-profit corporation with its principal place of business at 1003 Willow Creek Road, Prescott, AZ 86301.

9. Yavapai operates Yavapai Regional Medical Center West ("YRMC West") and Yavapai Regional Medical Center East ("YRMC East").

10. YRMC West is a 134-bed acute care hospital located at 1003 Willow Creek Road, Prescott, AZ 86301. YRMC West's Medicare provider number is 03-0012.

11. YRMC East is a 72-bed acute care hospital located at 7700 East Florentine Road, Prescott Valley, AZ 86314. YRMC East's Medicare provider number is 03-0118.

## III. JURISDICTION AND VENUE

12. The Court has subject matter jurisdiction over this case pursuant to 31 U.S.C. §3732(a) and 28 U.S.C. §§ 1331 and 1345.

13. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391(b) and (c) because the defendant transacts business in this District and/or one or more of the acts committed by the defendant and proscribed by 31 U.S.C. § 3729 occurred in this District.

14. This Court has personal jurisdiction over the defendant under 31 U.S.C. § 3732(a) because it is located in this District and it submitted false or fraudulent claims directly or indirectly to the federal government in this District.

15. Relator has direct and independent knowledge on which the allegations are based, is an original source of this information to the United States, and has voluntarily provided the information to the United States before filing this action based on the information.

16. To the extent that there has been any public disclosure of allegations or transactions, Relator has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and has voluntarily provided the information to the United States before filing this action based on the information.

## IV.   FEDERAL AND STATE-FUNDED HEALTH CARE PROGRAMS

### A.   Medicare

17. Medicare is a federal health insurance system for people 65 and older and for people under 65 with certain disabilities. Medicare Part A provides hospital insurance for eligible individuals. See 42 U.S.C. §§1395c-1395i. The United States Department of Health and Human Services ("HHS"), through the Centers for Medicare & Medicaid Services ("CMS"), administers the Medicare program.

### B.   Other Federal Health Care Programs

18. The federal Government administers other health care programs including, but not limited to, TRICARE and CHAMPVA. TRICARE, administered by the United States Department of Defense, is a health care program for individuals and dependents affiliated with the armed forces. CHAMPVA, administered by the United States Department of Veterans Affairs, is a health care program for the families of veterans with 100 percent service-connected disability.

## V.   THE UNITED STATES FALSE CLAIMS ACT

19. The United States False Claims Act prohibits, *inter alia*, the following:

- knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval;
- knowingly making or using (or causing to be made or used) a false record or statement material to a false or fraudulent claim; and
- knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money to the federal government.

31 U.S.C. §§ 3729(a)(1),(2), and (7) (2006), amended by 31 U.S.C. §§ 3729(a)(1)(A), (B), and (G) (West 2010).

## VI.   BACKGROUND

### A.   The Inpatient Prospective Payment System

20.   Section 1886(d) of the Social Security Act (the "Act") establishes a system of payment for the operating costs of acute care hospital inpatient stays under Medicare Part A based on prospectively set rates. 42 C.F.R. § 413.1(d); see id. §§ 412.1 to 412.632. This payment system is referred to as the inpatient prospective payment system (or "IPPS"). See CMS, "Acute Inpatient PPS," *available at* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/AcuteInpatientPPS/index.html?redirect=/AcuteInpatientPPS/ (last accessed July 1, 2015). Under the IPPS, each case is categorized into a diagnosis-related group ("DRG"). Each DRG has a payment weight assigned to it, based on the average resources used to treat Medicare patients in that DRG. *Id.*

21.   The base payment rate is divided into labor-related and non-labor-related shares. *Id.* The labor-related share is adjusted by the wage index applicable to the area where the hospital is located. *Id.* This base payment rate is multiplied by the DRG relative weight. *Id.*

////

22. On October 1, 2007, CMS created a new DRG system, the Medicare Severity DRG ("MS-DRG"), which expanded the number of DRGs.

### B. Financial Data and Reports

#### 1. Generally

23. CMS requires providers, including hospitals, to maintain sufficient financial records and statistical data for the proper determination of costs payable under Medicare. 42 CFR 413.20(a). Hospitals must furnish this information to CMS, through CMS's intermediaries (known as Medicare Administrative Contractors or "MACs"), in order to assure proper Medicare payments, receive Medicare payments, and satisfy Medicare overpayment determinations. *Id.* § 413.20(d)(1). Hospitals must permit the MACs to examine their records including, but not limited to, matters pertaining to fiscal, medical, and other recordkeeping systems; costs of operation; and the flow of funds and working capital. *Id.* § 413.20(d)(2)(ii),(vii), and (ix).

24. A MAC may suspend payments to a hospital for failure to maintain adequate records for the determination of reasonable costs under the Medicare program. *Id.* § 413.20(e).

#### 2. Requirement to Provide Adequate Cost Data

25. Hospitals that receive payment on the basis of reimbursable costs must submit adequate cost data. *Id.* § 413.24(a). The cost data must be based on hospital financial and statistical records which must be capable of verification by qualified auditors. *Id.* In general, the cost data must be based on an approved method of cost finding and on the accrual basis of accounting. *Id.*

#### 3. Requirement to Provide Accurate Cost Reports

26. The Medicare program requires hospitals to submit periodic reports of its operations that generally cover a consecutive 12-month period of the hospital's operations. *Id.* § 413.24(f). Cost reports are due on or before the last day of the fifth month following the close of the period covered by the report. *Id.* § 413.24(f)(2).

27. Hospitals must electronically submit cost reports to the MAC. *Id.* § 413.24(f)(4)(ii). In addition to the electronic submission, hospitals must submit a hard copy of a settlement summary, a statement of certain worksheet totals found within the electronic file, and a statement signed by its administrator or CFO certifying the accuracy of the electronic file or the manually prepared cost report. *Id.* § 413.24(f)(4)(iv).

**C.  Market Areas, Generally**

28. Since federal fiscal year ("FFY") 2005 (i.e., October 1, 2004), CMS has defined hospital labor market areas based on the Core Based Statistical Areas ("CBSAs") established by the Office of Management and Budget ("OMB").

29. The current CBSAs are based on the February 23, 2013 OMB-issued OMB Bulletin No. 13-01, *available at* https://www.whitehouse.gov/sites/default/files/omb/bulletins/ 2013/b13-01.pdf (last accessed July 1, 2015).

30. A Metropolitan Statistical Area ("MSA") is a type of CBSA associated with at least one urbanized area that has a population of at least 50,000. See United States Census Bureau, "Geographic Terms and Concepts - Core Based Statistical Areas and Related Statistical Areas" https://www.census.gov/geo/reference/gtc/gtc_cbsa.html (last accessed July 1, 2015). MSAs comprise "the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting." *Id.*

31. At all relevant times, CMS has used MSAs to define urban labor market areas. At all relevant times, Yavapai, YRMC West, and YRMC East have been located in MSA 39140, "Prescott, AZ" (hereinafter "MSA Prescott"). MSA Prescott's principal city is Prescott; MSA Prescott includes Yavapai County. OMB Bulletin No. 13-01 at Appx. pgs. 17, 44, 112.

////

////

### D. Noridian Healthcare Solutions, LLC

32. At all relevant times, Noridian Healthcare Solutions, LLC ("Noridian") has served as the MAC for the State of Arizona, and has jurisdiction over MSA Prescott.

## VII. YAVAPAI'S ACTIONABLE CONDUCT

33. As set forth below, for cost reporting periods 2007 and 2008, Yavapai's cost reports understated the hours worked by its employees at YRMC West, artificially inflating the average hourly wage ("AHW") reported to CMS. CMS, relying on Yavapai's data, computed a higher wage index for MSA Prescott, resulting in Medicare overpayments to YRMC West and YRMC East. Though Yavapai has correctly reported YRMC West's employee hours since cost reporting period 2009, its prior conduct has resulted in Medicare overpaying Yavapai approximately $19.1 million for FFY 2011 through FFY 2015.

### A. Yavapai Underreported Employee Hours on its Cost Reports

34. As stated above, Yavapai is required to file a cost report annually for YRMC East and YRMC West.

35. The cost report contains an attachment, Worksheet S-3, which captures the salary, wages, hours, and benefits of YRMC East and YRMC West employees.

36. The cost report also contains Worksheet A, which details reimbursable costs for YRMC East and YRMC West.

37. CMS incorporates the Worksheet S-3 and Worksheet A data when it computes the wage index for MSA Prescott.

38. For cost reporting periods 2007 and 2008, Yavapai used the aggregate salaries of both YRMC East and YRMC West in its Worksheet S-3 reporting for YRMC West.

39. For cost reporting periods 2007 and 2008, Yavapai then subtracted (or "excluded") the salaries of YRMC East, along with certain other non-allowable costs, from the aggregate.

////

40. However, when Yavapai reported the corresponding hours for 2007 and 2008, instead of using matching, aggregate hours of both facilities, it used only YRMC West's hours.

41. Yavapai <u>further</u> reduced YRMC West's reported hours by subtracting ("excluding") YRMC East's hours.

42. Yavapai's conduct resulted in YRMC West underreporting about 600,000 hours for cost reporting period 2007 and underreporting about 700,000 hours for cost reporting period 2008.

43. Yavapai's conduct resulted in YRMC West reporting a corresponding, artificially high AHW for cost reporting periods 2007 and 2008.

44. Yavapai's conduct resulted in YRMC West's reported AHW increasing from $33.48 in cost reporting period 2006 to $50.84 in 2007, to $51.89 in 2008.

45. Yavapai accurately reported YRMC West's 2009 hours in 2010.

46. Though Yavapai properly reported YRMC West's hours for cost reporting period 2009, on information and belief Noridian – Yavapai's MAC – adjusted Yavapai's hours to make them consistent with cost reporting periods 2007 and 2008, resulting in an AHW of $55.01 in cost reporting period 2009.

47. Yavapai acceded to Noridian's adjustment of YRMC West's hours for cost reporting period 2009, and otherwise concealed YRMC West's underreported hours for cost reporting periods 2007 and 2008.

48. As a consequence of Yavapai's conduct, YRMC West had the highest reported wage in Arizona among its peer hospitals for cost reporting periods 2007 through 2009.

49. As a result of Yavapai's conduct, MSA Prescott's wage index increased each federal fiscal year from FFY 2010 to FFY 2015 by an inappropriate amount.

50. By underreporting YRMC West's hours, Yavapai reported a higher AHW and benefitted from an increased corresponding wage index, resulting in receipt of excessive Inpatient and Outpatient Medicare reimbursement.

### B.   Financial Impact of Yavapai's Underreported Hours

51. Between FFY 2011 and FFY 2015, Yavapai submitted claims to Medicare electronically.

52. As a result of YRMC West's underreported hours for cost reporting periods 2007 and 2008, Medicare improperly paid Yavapai a total of approximately $15.1 million from FFY 2011 to FFY 2014. These payments include:

- Inpatient Operating Payments           $9.7 Million
- Capital Payments                       $0.8 Million
- Disproportionate Share Payments ("DSH")   $0.5 Million
  **Subtotal Inpatient Impact**          **$11.0 Million**

- Outpatient Payments                    $4.1 Million
  **Total Impact**                       **$15.1 Million**

53. As a result of the adjustments made to Yavapai's cost report for cost reporting period 2009, Medicare improperly paid Yavapai an estimated $4 million from FFY 2013 to FFY 2015. These payments include:

- Inpatient Operating Payments           $2.7 Million
- DSH                                    $0.05 Million
- Capital Payments                       $0.2 Million
  **Subtotal Inpatient Impact**          **$2.95 Million**

- Outpatient Payments                    $1.1 Million
  **Total Impact**                       **$4.0 Million**

### C.   Yavapai's Knowing Failure to Return Medicare Overpayments

54. On February 19, 2011, during a bus ride to an event in Los Angeles, California, Relator informed Yavapai's then-CEO that Yavapai had misreported its AHW, resulting in a higher Medicare reimbursement.

55. The CEO responded with words to the effect of "We'll have to look into that."

56. In March 2012 at the Arizona Snowbowl Ski Lodge, Relator informed Yavapai's then-CFO that MSA Prescott's wage index was increasing because Yavapai had misreported the data on its cost reports.

57. The CFO responded with words to the effect of "We'll have to look at that."

58. Relator alleges further, on information and belief and based on his extensive experience with the cost reporting process, that Yavapai was alerted to its inaccurate cost reports for cost reporting periods 2007 and 2008 – and the improperly inflated AHW – during Noridian's review of YRMC West's cost report for reporting period 2009 in calendar year 2012.

59. Despite the foregoing, Yavapai has not corrected its cost reports for reporting periods 2007 and 2008.

60. Despite the foregoing, Yavapai has not returned any Medicare overpayments calculated based on an improperly inflated AHW for the cost reporting periods 2007, 2008 and 2009.

### D. False Claims and the United States' Damages

61. At all relevant times, Yavapai has knowingly sought payments from Medicare that were calculated using a rate based in part on YRMC West's improperly inflated AHW.

62. At all relevant times, Yavapai has submitted claims to Medicare knowing that the reimbursement rate was based in part on YRMC West's improperly inflated AHW.

63. At all relevant times, Yavapai has sought payments from Medicare in reckless disregard to the fact that those payments were calculated using a rate based in part on YRMC West's improperly inflated AHW.

64. At all relevant times, Yavapai has submitted claims to Medicare in reckless disregard to the fact that the reimbursement was based in part on YRMC West's improperly inflated AHW.

65. Between Federal Fiscal Year 2011 and Federal Fiscal Year 2015, Yavapai received payments from Medicare calculated using a rate based in part on YRMC West's improperly inflated AHW.

66. At all relevant times, Yavapai has knowingly retained Medicare overpayments calculated based on an improperly inflated AHW for cost reporting periods 2007, 2008 and 2009.

67. At all relevant times, Yavapai has knowingly concealed its obligation to repay Medicare for overpayments received between Federal Fiscal Year 2011 and Federal Fiscal Year 2015.

68. The United States, through its carriers and intermediaries, has made payments to Yavapai Community Hospital Association and has been damaged in an amount to be determined. The United States is entitled to treble its actual damages and to civil penalties in the amount of $5,500 to $11,000 for each of the false claims submitted.[1]

## COUNT I

### (VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(A))

69. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

70. By virtue of the acts described above, Yavapai Community Hospital Association knowingly presented or caused to be presented to the United States false or fraudulent claims for payment or approval by Medicare in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

71. The claims were false in that they sought payment based in part on a wage index improperly inflated by Yavapai Community Hospital Association's false cost reports.

72. Yavapai Community Hospital Association knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to the United States

---

[1] Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes) and 64 Fed. Reg. 47099, 47103 (1999), the FCA civil penalties are $5,500 to $11,000 for violations, such as those alleged here, occurring on or after September 29, 1999.

– i.e., the foregoing false and fraudulent claims for payments from Medicare – in violation of 31 U.S.C. § 3729(a)(1)(A).

73. The United States relied on these false and fraudulent claims, was ignorant of the truth regarding these claims, and would not have paid Yavapai Community Hospital Association for these false and fraudulent claims had it known the falsity of said Medicare claims by Yavapai Community Hospital Association.

74. As a direct and proximate result of the false and fraudulent claims made by Yavapai Community Hospital Association, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the FCA.

## COUNT II

### (VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(B))

75. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

76. Yavapai Community Hospital Association knowingly made, used or caused to be made or used, false records or false statements material to the foregoing false or fraudulent claims to get these false or fraudulent claims paid and approved by the United States, in violation of 31 U.S.C. § 3729(a)(1)(B).

77. Yavapai Community Hospital Association's knowingly false records or false statements were material, and on information and belief continue to be material, to the false and fraudulent claims for payments it made, or caused to be made, to the United States for Medicare reimbursements and benefits.

78. Yavapai Community Hospital Association's materially false records or false statements are set forth above and include, but are not limited to false Medicare Cost Reports, CMS Form 2552-96, and claims and/or bills for payment that explicitly and/or impliedly attested that Yavapai Community Hospital Association complied with Medicare's requirements for payment.

79. These said false records or false statements were made, used or caused to be made or used, with Yavapai Community Hospital Association's actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

80. As a direct and proximate result of these materially false records or false statements, and the related false or fraudulent claims made by Yavapai Community Hospital Association, the United States has suffered damages and therefore is entitled to recovery as provided by the FCA in an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such violation of the FCA.

## COUNT III

**(VIOLATION OF THE FALSE CLAIMS ACT -- 31 U.S.C. § 3729(a)(1)(G))**

81. Relator incorporates by reference and re-alleges all paragraphs of this Complaint set forth above as if fully set forth herein.

82. Yavapai Community Hospital Association knowingly made, used or caused to be made or used, and continues to knowingly make, use or cause to be made or used, false records or false statements, material to an obligation to pay or transmit money or property to the United States, or knowingly concealed and continues to conceal an obligation to pay or transmit money or property to the United States, or knowingly and improperly avoided or decreased, and continues to knowingly and improperly avoid and decrease, an obligation to pay or transmit money or property to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

83. As a direct and proximate result of the above conduct by Yavapai Community Hospital Association, the United States has suffered damages and therefore is entitled to recovery as provided by the False Claims Act of an amount to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each violation of the False Claims Act.

////

////

# CLAIM FOR RELIEF

WHEREFORE, Relator requests that judgment be entered against Defendant for treble the amount of the United States' damages to be determined at trial, and all allowable civil penalties, fees, interest and costs under the False Claims Act and for all other and further relief as the Court may deem just and equitable.

RESPECTFULLY SUBMITTED this 12th day of April, 2016

**JENNINGS, HAUG & CUNNINGHAM, LLP**

By: _____
Chad S. Schexnayder
Travis A. Pacheco

**KLINE & SPECTER, P.C.**
By:   Thomas R. Kline*
      David J. Caputo*
      David C. Williams*

**JOSEPH TRAUTWEIN & ASSOCIATES, LLC**
By:   Joseph Trautwein*

*Attorneys for the Plaintiff-Relator*

*Not Yet Admitted in Arizona for this Action

5500-2 amb

31U2874.DOCX

15